Thomas W. O'Connell v. Commissioner. Jacqueline B. O'Connell v. Commissioner.
O'Connell v. Commissioner
Docket Nos. 1597-67, 1598-67.
United States Tax Court
T.C. Memo 1971-306; 1971 Tax Ct. Memo LEXIS 28; 30 T.C.M. (CCH) 1311; T.C.M. (RIA) 71306; November 30, 1971, Filed. Thomas W. O'Connell, pro se, 65 S. Washington St., Rochester, N. Y. Stephen M. Miller, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in the individual income tax liabilities of Thomas W. O'Connell and Jacqueline B. O'Connell, petitioners herein, as follows: Thomas W.
O'Connell,
Docket No.
1597-67
Additions to Tax
Income Tax
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
Year
Deficiency
I.R.C. of 1954
I.R.C. of 1954
I.R.C. of 1954
1956
$ 1,591.58
$ 397.90
$ 79.58
$ 41.31
1957
3,854.64
963.66
192.73
104.56
1958
18,030.73
4,507.68
901.54
50 0.92
1959
35,886.01
8,971.50
1,794.30
999.77
1960
36,441.27
1,849.09
1,849.09
9.09
1961
3,448.01
862.00
202.8 2
10.98
1962
2,899.62
724.91
144.98
74.87
1963
17,336.40
0
866.82
17.20
1964
15,532.44
3,106.49
821.48
0
1965
6,945.22
0
347.26
0
Jacqueline B. O'Connell, Docket No. 1598-67
1956
$ 1,275.52
$ 287.63
$ 63.78
$ 30.72
1957
1,307.77
286.27
65.39
30.11
1958
1,385.32
282.21
69.29
28.53
1959
2,465.48
554.37
123.27
59.11
1960
3,61 8.98
853.97
180.95
93.21
1961
1,024.49
181.85
51.22
16.81
1962
2,556.87
470.57
127.84
44.61
1963
981.67
0
49.08
0
1964
245.67
61.42
45.19
0
1965
415.52
0
20.78
0
*29 Due to concessions by the parties subsequent to the statutory notice of deficiency the deficiencies for some years are smaller. Petitioners are husband and wife residing in Rochester, New York. In the years they filed income tax returns during the period herein involved they filed individual returns with the district director of internal revenue in Buffalo. The issues for decision are (1) whether respondent, through the use of the bank deposit method and by other miscellaneous 1312 adjustments, correctly determined the petitioners' unreported income; (2) to what extent petitioner Thomas O'Connell (Docket No. 1597-67) is entitled to business deductions; (3) whether petitioners are liable for additions to tax under section 6651(a), I.R.C. 1954, [1] for failure to file a tax return, under section 6653(a), for negligence or intentional disregard of the income tax rules and regulations, and under section 6654, for failure by an individual to pay an estimated income tax. Findings of Fact This case was heard by James M. Gussis, Commissioner of the United *30 States Tax Court, on July 20-23, 1970. Some of the facts were stipulated, and others derive from the Commissioner's Report and have not been objected to. Those facts are so found, but first we turn to the disputed factual issues. Petitioners' objections under Rule 48(f) to the Tax Court Commissioner's Report are directed chiefly at the fairness of the trial and not at any specific proposed finding of fact. Further, petitioners' claim that we may not adopt the stipulation that Thomas O'Connell failed to file income tax returns for the years 1956, 1957, 1958, 1959 and 1962 merely because at trial evidence was introduced which tends to establish that Thomas O'Connell filed a late return for 1962. We find that Thomas O'Connell filed an untimely return for 1962, but we also find that he filed no returns for the years 1956 through 1959. Of the respondent's Rule 48(f) objections to the Commissioner's Report, two are corrections to dates of certain transactions and are adopted; the third and final exception requests us to determine that $318 out of a total $33,230.72 worth of deposits made to checking account #71511 in the Marine Midland Trust Co. during 1959 which were stipulated not *31 to be gross income of Thomas O'Connell was already accounted for in the statutory notice and should not be again taken into account in our redetermination of the deficiency for that year. The modification merely eliminated double counting in the related stipulation and is adopted. We further find that an additional $2,000 of such deposits were not treated as income in 1959 in the statutory notice and should not be taken into account in our redetermination. At trial respondent conceded an additional $33 of the deposit to the aforesaid account #71511 of 10-29-59 which was not reflected in the Report of the Tax Court Commissioner. Our independent review of the record satisfies us that petitioners are entitled to no further reduction in the amounts of their respective incomes as found by the Tax Court Commissioner for the taxable years in question and that petitioners have not proven deductions other than those allowed in the Commissioner's Report. Accordingly we adopt the Report (with the foregoing modifications), a summary of which follows: Throughout all the taxable years in question Thomas O'Connell's occupation has been that of attorney. During 1956, 1957 and up to June 1958 *32 he was employed by a law firm; most of his business expenses during that period were reimbursed by the firm. In June 1958 he established his own law practice. Throughout all the taxable years in question, Jacqueline O'Connell was employed as an instructor by the Rochester Institute of Technology in Rochester, New York. Petitioners have 3 children: Devin O'Connell, Sean O'Connell, and Ann O'Connell. Anna Briggs, mother of petitioner Jacqueline O'Connell, opened the following joint savings accounts in her own and in her daughter's names: Balance trans-
Account
Date
Date
ferred to
No.
Bank
Opened
Closed
Account No.
Bank
412954
Community Savings Bank
7-21-50
7-18-58
34927
Community Sav-
-
Rochester
ings Bank
17925
Lincoln Rochester
8-30-50
Trust Co.
- Rochester Account No. 34927 in the Community Savings Bank was in petitioner Jacqueline O'Connell's name alone, and was closed July 22, 1960, with a balance then equal to $1,269.69. Anna Briggs died in March 1958. Petitioners opened the following checking and savings accounts, part or all of the deposits to which constituted taxable income of petitioners during *33 the years at issue: 1313 Account
Account
Date
Opened By
No.
Bank
Opened
Thomas
360-107
Monroe County Savings Bank -
2- 4-52
O'Connell
Rochester
Thomas
71511
Marine Midland [1]Trust Co.
6- 3-52
O'Connell
(formerly Union Trust Co. -
Rochester)
Thomas
017690
Columbia Banking Savings &
7-14-58
O'Connell
Loan Assn. - Rochester
Thomas
35860
Community Savings Bank - Roch-
6-29-59
O'Connell
ester
Thomas
501-55356-8
Midland [1]Trust Co. (for-
1-15-60
O'Connell
merly the Genesee Valley
Union Trust Co. - Rochester)
Thomas
41-482
Central Trust Co. - Rochester
7-13-60
O'Connell
Thomas
501-85176-3
Marine Midland Trust Co. o.
3-18-63
O'Connell
Thomas
501-85644-7
Marine Midland Trust Co.
2-17-64
O'Connell
Thomas
501-77372-0
Marine Midland Trust Co.
3- 5-64
O'Connell
Jacqueline
368-968
Monroe County Savingsbank -
6-29-56
O'Connell
Rochester
Jacqueline
739138
Rochester Savings Bank
4-24-57
O'Connell
Jacqueline
739940
Rochester Savings Bank
8-26-67
O'Connell
Jacqueline
4570
Community Savings Bank -roch-
5-27-58
O'Connell
ester
Jacqueline
P-029700
Marine Midland Trust Co.
1-12-60
O'Connell
Jacqueline
501-56797-6
Marine Midland Trust Co.
12- 8-61
O'Connell
Jacqueline
501-75804
Marine Midland Trust Co.
12- 8-61
O'Connell
55048
Lincoln Rochester Trust Co. -
3-11-60
Rochester
Thomas
9609
First National Bank of Pompano
3-30-61
O'Connell
Beach, Florida
and Jac-
queline
O'Connell
Thomas
46-489-9
First National Bank of Pompano
12-22-64
O'Connell
Beach, Florida
and Jac-
queline
O'Connell
*34 Balance
Account
Type of
Desig-
Trans-
Opened By
Account
nation
ferred
Thomas
Savings
O'Connell
Thomas
Checking
Jt. Acct.
501-
O'Connell
80557-5
Thomas
Jt. Acct.
O'Connell
Thomas
Savings
O'Connell
Thomas
Savings
O'Connell
Thomas
Checking
O'Connell
Thomas
Checking
In the name [2]
O'Connell
of Hardrock
Paving
Thomas
Checking
O'Connell
Thomas
Checking
O'Connell
Jacqueline
Savings
Intrust
O'Connell
for Devin
O'Connell
Jacqueline
Savings
In trust
O'Connell
for Ann C.
O'Connell
Jacqueline
Savings
In trust for
O'Connell
Sean D.
O'Connell
Jacqueline
Savings
In trust
O'Connell
for Devin
O'Connell
Jacqueline
Savings
O'Connell
Jacqueline
Savings
O'Connell
Jacqueline
O'Connell
Savings
Jacqueline
O'Connell in
trust for Ann
C. O'Connell
Thomas
Savings
Jacqueline
O'Connell
O'Connell
and Jac-
and Thomas
queline
O'Connell
O'Connell
Thomas
Checking
Thomas
O'Connell
O'Connell and
and Jac-
Jacqueline
queline
O'Connell
O'Connell
*35 Prior to taking a trip to Mexico in 1959 in connection with an educational leave of absence granted to Jacqueline O'Connell, the petitioners opened several accounts in the Banco Nacional de Mexico in Mexico City. All but one of the deposits to these accounts either were inter-bank transfers which do not represent additional income of either petitioner, or were otherwise explained or conceded in the statutory notice. 1314 The deposit which represents income is that of 3-3-60 in the amount of $9,188.64. The following is the amount of Thomas O'Connell's gross income as evidenced by unexplained bank deposits for each of the taxable years in question. The amounts given for each year represent the amounts stated in the statutory notice increased and/or decreased as the case may be due to concessions of the parties, and decreased by certain amounts attributable to checks made payable to clients whom Thomas O'Connell represented in his law practice: Total
Deposits conceded
Disbursements to clients
by respondent
Unexplained
Date
Bank
of
Bank and
Year
Deposits
Deposit
Account No.
1956
$ 8,354.92
1957
12,754.18
7-22
Marine Midland
Trust Co.
71511
1958
13,899.18
1-5
71511
4-29
71511
6-26
71511
6-27
71511
8-1
71511
8-28
71511
9-8
71511
9-12
71511
10-1
71511
12-18
71511
12-26
71511
1959
25,460.29
1-23
Marine Midland
Trust Co.
71511
1-28
71511
2-4
71511
3-16
71511
4-13
71511
6-15
71511
6-22
71511
6-22
71511
1959
7-3
71511
7-24
71511
9-17
71511
10-2
71511
10-29
71511
10-29
71511
1960
$18,970.53
2-1
Marine Midland
Trust Co.
71511
3-15
71511
5-2
71511
(5-26
71511
( and
71511
(6-9
71511
6-20
71511
6-27
71511
9-6
71511
12-12
71511
1961
$10,200.35
1962
$35,669.63
9-25
Marine Midland
Trust Co.
71511
1963
$ 3,902.92
2-7
Marine Midland
Trust Co.
71511
2-15
71511
3-1
71511
5-13
71511
5-24
71511
6-26
71511
4-24
Marine Midland
Trust Co.
501-851763
8-26
501-851763
11-19
501-851763
12-5
501-851763
12-16
501-851763
12-31
501-851763
1964
$28,725.04
7-20
Marine Midland
Trust Co.
71511
8-13
71511
8-14
71511
11-24
71511
1965
$11,213.89
*36 Disbursements to clients
Amount thereof
Date
Amount
not
of
Bank and
of
constituting
Year
income
Check
Account No.
Check
1956
1957
$ 2,270.00
1958
3,900.00
3-2-58
$ 631.85
195.00
5-12-58
1,484.00
2,800.00
760.00
2,800.00
$2,875.85
3,400.00
500.00
300.00
500.00
1,300.00
5,412.61
706.60
$21,814.21
1959
$ 60.00
1-2-59
Marine Midland
$ 100.00
Trust Co.
71511
1,000.00
1-16-59
71511
100.00
1,545.00 1-20-59
71511
2,985.75
5,414.17
5-29-59
71511
10.00
651.80
6-12-59
71511
354.45 10.00
6-23-59
71511
15.00
956.00
11-4-59
71511
2,930.16
275.00
12-11-59
71511
100.00
1959
$ 2,450.00
12-11-59
71511
$1,000.00
12,201.58
5-12-61
Community
1,331.19
360.00
Savings Bank
$8,926.55
583.80
35977
470.00
4,968.37
$30,945.72
1960
$ 666.67
1-11-60
Marine Mid-
$ 86.20
land Trust Co.
71511
2,000.00
1-15-60
71511
63.52
3,015.72
1-18-60
71511
25.00
)
1-22-60
71511
250.00
626.00)
1-22-60
71511
15.00
)
1-22-60
71511
125. 00
509.10
1-22-60
71511
15.00
9,600.00
1-22-60
71511
3.61
20,000.00
1-22-60
71511
429.00
817.00
1-22-60
71511
431.00
$37,234.49
5-3-60
71511
227.16
10-17-60
71511
1,065.00
12-20-60
71511
1,100.00
$3,835.49
1961
4-18-61
Marine Mid-
$ 540.00
land Trust Co.
71511
1962
$ 325.00
1963
$10,369.11
3,537.74
832.56
450.00
897.60
500.00
1,000.00
6-18-63
Marine Midland
$500.00
Trust Co.
71511
3,700.00
167.50
3,200.00
700.00
1,550.00
$26,904.51
1964
$ 1,400.00
91.70
6,074.28
4,025.35
$11,591.33
1965
*37 Thomas O'Connell had deductible business expenses in the amounts of $2,567.23 in 1958 and of $3,811.46 in 1959. Jacqueline O'Connell failed to file income tax returns for each of the years 1956-1962; she timely filed returns in 1963 and 1965 and she filed a delinquent return in 1964. The amounts of her unreported income during the period 1956-1965 derive variously from unreported wages, rental income from a house in Rochester, New York, and unexplained bank deposits (after certain concessions by respondent), as shown in the following schedule: Unreported
Unexplained
Year
Wages
Deposits
Rent
1956
$3,208.33
$1,593.75
0
1957
3,420.03
917.50
0
1958
3,783.35
916.74
$700
1959
3,609.96
4,527.75
0
1960
2,815.04
2,211.46
0
1961
2,595.00
1,727.10
0
1962
6,005.00
3,833.44
0
1963
0
3,352.28
0
1964
0
0
0
1965
0
0
0
Opinion At the outset we note that petitioners have filed no briefs herein though granted ample time to do so. This case presents the familiar problem posed by situations where taxpayers have not kept adequate books and records and as a consequence the respondent has made a determination of deficiencies in *38 tax by using the unexplained bank deposits method. In such cases the burden is thus placed on the taxpayer to prove that the unexplained bank deposits did not constitute taxable income. John Harper, 54 T.C. 1121, 1129 (1970). Respondent contends that petitioner Thomas O'Connell has not carried his burden of proof that certain amounts evidenced by checks drawn on his personal bank accounts were not gross income by testimony of the various payees that petitioner had represented them in his legal practice and that certain checks drawn on his accounts were proceeds of legal settlements. As a matter of strict inference it is probably true that a deposit to an account cannot be explained by a check drawn on the account; and petitioner made no attempt to trace specific deposits or parts thereof, for example, to judgment debtors or their attorneys. However, we think that as to the amounts of the checks that were corroborated by clients the petitioner has overcome the presumption that an unidentified deposit constitutes income. Robert M. Brittingham, 57 T.C. - (Oct. 14, 1971). In each *39 instance where we have reduced unexplained deposits by the amount 1316 of such a check, petitioner secured the testimony of an apparently loyal client who recounted that Thomas O'Connnell had handled a legal dispute for him and had paid over part of the proceeds derived either to the client or at the client's direction to a third party, a physician or a hospital, for example. Of course, it may have been improper for petitioner to deposit his clients' money in his personal checking accounts, and undoubtedly there would have been no dispute over these funds if petitioner had been more circumspect, but we are prepared to recognize that the practice followed by petitioner is not uncommon and does not invariably lead one to conclude that the monies were held under claim of right. As this Court has stated, "the essence of taxable income, as the concept is used used in section 61, is the accrual of some gain or benefit to the taxpayer; mere dominion over money is not the decisive factor. See * * * Seven-Up Co., 14 T.C. 965 (1950)." Robert Brittingham, supra. The rest of the *40 deposits of either petitioner, as determined by respondent, however, represent gross income. Neither petitioner offered an explanation for any specific deposit, and so we have sustained the amounts stated in the deficiency notices to be unexplained deposits in each year after adjusting these amounts for concessions of the parties subsequent to the deficiency notices and after adjusting for the above-mentioned checks made payable to or for clients of Thomas O'Connell. We have sustained respondent as to the business deductions allowable to Thomas O'Connell for each of the taxable years. (There are no disputed deductions in the case of Jacqueline O'Connell.) It is worth noting that in the years Thomas O'Connell filed income tax returns he claimed business deductions which were not disallowed in the statutory notice. For some years the statutory notice itself makes allowances for expenses, and for other years respondent subsequently conceded additional amounts. At trial Thomas O'Connell attempted to prove his entitlement to such deductions from canceled checks. We presume these are the only business records he has of his law practice and we think petitioner has not gone far enough to *41 show that any of these checks represent expenses incurred in his business which were not allowed by respondent; nor do we think that petitioner has avoided double counting in view of respondent's substantial concessions. Petitioners have not challenged directly the additions to the tax assessed by respondent, nor could they seriously do so in light of their inadequate recordkeeping and their neglect in some years to file returns. Only a small amount of the rental income determined in the deficiency notice of Jacqueline O'Connell remains in dispute. We think the record supports respondent. Petitioner's mother received rent from the house in Rochester until her death in March 1958, and it seems plain that petitioner, who succeeded to the title to the property, received rent from the tenants until they moved out in October 1958. The house was not rented after October 1958, and thus only the income for the 7-month period is involved. Although there was no direct evidence of the monthly rent, there is no dispute over respondent's use of the figure stated by Thomas O'Connell in an application for a mortgage loan on the property. Decisions will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
1. In cases of merger of the bank with which petitioners originally opened an account with the Marine Midland Trust Co., we refer henceforth to the account by the latter name only. ↩
2. Hardrock Paving is the designation of a joint venture of petitioner Thomas O'Connell, his brother John, and one Daniel Lanni, an engineer, which was involved in heavy construction work for the City of Rochester.↩